**ROBERT C. JAROSH #6-3497**
**ERIN E. BERRY, #7-6063**
Hirst Applegate, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
rjarosh@hirstapplegate.com
eberry@hirstapplegate.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JL WILKINS, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| vs. | } | Civil No. 1:22-CV-00204 |
| | } | |
| THE UNIVERSITY OF WYOMING; | } | |
| ED SEIDEL, in his official capacity as | } | |
| President of the University of Wyoming; | } | |
| KIM CHESTNUT, in her official capacity | } | |
| as Interim Vice President for Diversity, | } | |
| Equity, and Inclusion; PARAG CHITNIS, | } | |
| in his official capacity as Vice President | } | |
| for Research and Economic Development; | } | |
| and H. VICTORIA BRYANT, in her | } | |
| official capacity as Director of the | } | |
| Wyoming Technology Transfer and | } | |
| Research Products Center, | } | |
| | } | |
| Defendants. | } | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants the University of Wyoming (the "University"), Dr. Ed Seidel, Dr. Kim

Chestnut, Dr. Parag Chitnis, and H. Victoria Bryant (collectively referred to as "Defendants") by

and through undersigned counsel, hereby respectfully submit to the Court this *Memorandum in*

*Support of Defendants' Motion to Dismiss* pursuant to FED. R. CIV. P. 12(b)(6), and in support hereof state as follows:

## INTRODUCTION

Federal common law requires a plaintiff to sufficiently allege ***facts*** and not mere legal conclusions before he may force a party to defend a lawsuit. Here, JL Wilkins ("Plaintiff") does not do so. Rather, Plaintiff recites threadbare legal conclusions without the requisite factual allegations necessary to withstand a motion to dismiss. In addition to this pleading failure, Plaintiff's *Complaint* must be dismissed for various, additional factual and legal reasons:

- Plaintiff's claims against the individual defendants in their official capacities are duplicative of the claims against the University and therefore subject to dismissal.
- Plaintiff's claim for violations of the Wyoming Fair Employment Practices Act ("WFEPA") against the individual defendants in their official capacities fails as a matter of law because the individual defendants are not subject to the WFEPA.
- Defendants are immune from Section 1983 claims.
- Violation of a University regulation is not an actionable claim.
- Plaintiff failed to exhaust his administrative remedies with respect to his claim for failure to promote and termination based on sex, race, or religion.

## FACTS

Plaintiff alleges the following facts in his *Complaint,* which this Court may assume as true for the purpose of deciding whether the *Complaint* is subject to dismissal. In May 2015, while Plaintiff was a student at the University of Wyoming College of Law, he accepted a position as a paid Patent Research Analyst intern with the Wyoming Technology Transfer and Research Products Center ("RPC"). *Complaint* at ¶¶ 1-2. After Plaintiff graduated in May 2017, the University offered to allow him to continue working for the RPC as a part-time employee. *Id.* at ¶ 14. Plaintiff accepted. *Id.*

In January 2018, Davona Douglass, Plaintiff's supervisor and the director of the RPC, left the University. *Id.* at ¶¶ 12, 35. In September 2018, H. Victoria Bryant was promoted, on an emergency basis, to the assistant department director of the RPC. *Id.* at ¶¶ 34-35. Plaintiff alleges Ms. Bryant "had similar qualifications (*e.g.,* law degree) as [Plaintiff] and had been doing the same job" at the time she was promoted. *Id.* at ¶ 34. Ms. Bryant was subsequently promoted to be the interim director of the RPC and later to the full director of the RPC. *Id.* at ¶ 39.[1]

In October 2019, Plaintiff took part in a diversity training he claims was "steeped in critical race theory." *Id.* at ¶ 46. Plaintiff alleges he provided feedback about and stated his opposition to the training, and that the feedback became part of his permanent employment record. *Id.* at ¶¶ 48-49. Plaintiff alleges that after he submitted this feedback, he "was never given a meaningful opportunity for advancement or promotion." *Id.* at ¶ 50.

Plaintiff filed a *Charge of Discrimination* against the University on July 8, 2021, claiming he was denied a promotion and his hours were cut because of his sex, sexual orientation, race, and religion. *Id.* at ¶ 52, Ex. A. Plaintiff filed a second *Charge of Discrimination* against the University on November 4, 2021, alleging he was discharged and retaliated against for engaging in protected opposition to Title VII discrimination. *Id.* at ¶ 54, Ex. B. Subsequently, on September 19, 2022, Plaintiff filed suit against the University and four individuals in their official capacity: University President Ed Seidel, Vice President for Student Affairs Kim Chestnut, Vice President for Research and Economic Development Parag Chitnis, and Ms. Bryant (collectively referred to as the "Individual Defendants").

---

[1] The *Complaint* does not include the dates for these promotions.

Plaintiff's *Complaint* includes seven causes of action: (1) discrimination for failing to promote him to the assistant director position in 2018, retaliation, and wrongful termination in violation of Title VII; (2) discrimination for failing to promote, retaliation, and wrongful termination in violation of the WFEPA; (3) violation of University Regulation 4-1; (4) discrimination in violation of Title VI; (5) discrimination in violation of Title IX; (6) discrimination and retaliation in violation of equal protection pursuant to Section 1983; and (7) deprivation of freedom of speech and religion pursuant to 42 U.S.C. § 1983.  Defendants assume all claims are asserted against each of them since the *Complaint* in not specific in that regard.

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 12(b)(6), a court shall dismiss a complaint when the plaintiff fails to state a claim upon which relief can be granted. Historically courts construed complaints liberally and granted motions to dismiss only rarely, where "'it appear[ed] beyond a doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir 2007) (internal quotation omitted). However, in *Bell Atl. Corp. v. Twombly*, the Supreme Court recognized that "this famous observation has earned its retirement." 550 U.S. 544, 563 (2007). The Supreme Court then prescribed a new inquiry: whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also e.g., Lindley Constr., Inc. v. Bank of the West*, No. 16-CV-0048-F, 2016 U.S. Dist. LEXIS 194470, at *3 (D. Wyo. July 19, 2016). Under this standard:

> [A] plaintiff must "nudge[ ] [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in

> support of the pleaded claims is insufficient; the complaint must give the
> court reason to believe that *this* plaintiff has a reasonable likelihood of
> mustering factual support for *these* claims.

*Ridge*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570) (internal citation omitted) (brackets

and emphasis in original). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted) (bracket in original);

*see also e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "In keeping with these

principles[,] a court considering a motion to dismiss can choose to begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth.  While

legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679. Thus, a court's approach is two pronged. First, the court identifies "legal

conclusions" not entitled to the assumption of truth. *See id.* Second, the court addresses the "nub"

of the complaint – "the well-pleaded, nonconclusory factual allegation[s]" – to determine whether

the complaint states a plausible claim for relief. *See id.* at 680.

## ARGUMENT

### I.    Plaintiff's claims against the Individual Defendants fail as a matter of law.

Plaintiff named four individuals as defendants in their official capacities: Dr. Ed

Seidel (President of the University), Dr. Kim Chestnut (Vice President for Diversity, Equity, and

Inclusion), Dr. Parag Chitnis (Vice President for Research and Economic Development), and H.

Victoria Bryant (Director of the Wyoming Technology transfer and RPC). All of Plaintiff's claims against the Individual Defendants are subject to dismissal for two reasons: (a) the claims are duplicative of the claims against the University; and (b) the claims merely provide legal conclusions rather than the requisite factual allegations necessary to state a plausible claim for relief. Additionally, Plaintiff's claim against the Individual Defendants for violation(s) of the WFEPA fails as a matter of law because the Individual Defendants are not "employers" as that term is defined by the WFEPA. Accordingly, the Court should dismiss the Individual Defendants.

A. The claims against the Individual Defendants are duplicative of the claims against the University.

In general, official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Ky. v. Graham,* 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n.55 (1978)). Similarly, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985)); *see also Pietrowski v. Town of Dibble,* 134 F.3d 1006 (10th Cir. 1998) ("[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works"). Therefore, "[i]f a governmental entity is already a defendant in a lawsuit, then any official capacity claims against its employees are redundant and may be dismissed." *Griffin v. Indep. Sch. Dist. No. 1,* 2013 U.S. Dist. LEXIS 162021 (N. Dist. Okla., Nov. 14, 2013) (dismissing claims against individual in her official capacity as duplicative of claims against the entity); *see also Thouvenell v. City of Pittsburg,* 2018 U.S. Dist. LEXIS 103628 (D. Kan., June 21, 2018) (dismissing § 1983 claims against individuals in their official capacities as duplicative of claims against entity); *Thanongsinh*

*v. Bd. Of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006) (affirming dismissal of a Title VII claim against a school district employee in his official capacity because it was duplicative of plaintiff's Title VII claim against the school district).

Here, Plaintiff named as Defendants both the Individual Defendants in their official capacities and the University, and the *Complaint* is devoid of any allegations that the Individual Defendants acted in any way beyond their official capacities. Indeed, as explained in Section I(B), *infra*, the *Complaint* is wholly deficient in terms of factual allegations related to the Individual Defendants. Plaintiff did provide one conclusory allegation with respect to Individual Defendants: they "either directed, approved, ratified, or otherwise suborned the actions and omissions of the University of Wyoming . . .." *Complaint* at ¶ 57. However, this allegation makes clear that Plaintiff seeks to impose liability against the Individual Defendants in their official capacities. Because all of Plaintiff's claims against the Individual Defendants in their official capacities are duplicative of Plaintiff's claims against the University, dismissal is proper.

B. <u>Plaintiff's vague claims against the Individual Defendants fail to meet the federal pleading standard.</u>

Plaintiff's causes of actions generally incorporate all facts set forth in the *Complaint*, without specifically describing the facts applicable to each cause of action. Accordingly, it is difficult to know whether Plaintiff intended to assert each cause of action against each Individual Defendant. However, assuming all the causes are against each of the Individual Defendants, Plaintiff failed to plead sufficient factual allegations against the Individual Defendants under *Twombly*, *Iqbal*, and their progeny. As a result, and even if the claims are not subject to dismissal as duplicative (they are), they are subject to dismissal for failure to state a claim.

In addition, in cases involving multiple defendants, it is even more important for a plaintiff to provide fair notice of what claims are against each defendant. *Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1250 (10th Cir. 2008). If a complaint recites "a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.* (citing *Atuahene v. City of Hartford,* 10 F.App'x 33, 34 (2d Cir. May 31, 2001) ("granting a motion to dismiss for failure to provide fair notice under Rule 8 in part because the complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants'") (internal quotations omitted)). Adequate pleading, including factual support of who did what and when, is the cornerstone of FED. R. CIV. P. 8. *See id.*

Here, the "Claims" section of Plaintiff's *Complaint* includes seven separate "claims," but expressly asserts those claims against only the University.[2] Put another way, Plaintiff's *Complaint* does not *expressly* assert any legal claims against any of the Individual Defendants. The *Complaint* does, however, "adopt" the factual allegations (¶¶ 1-57) preceding the "Claims" section as a part of each "claim." Regardless, there are no specific factual allegations against two of the Individual Defendants—Dr. Seidel and Dr. Chitnis. Their names and positions

---

[2] *Complaint* at ¶ 59 ("[t]he University of Wyoming's practices and actions, as set forth under paragraphs 1-57, above, constitute unlawful employment discrimination"); *id.* at ¶ 64 ("[t]he University of Wyoming violated the Wyoming state statute prohibiting discrimination"); *id.* at ¶ 65 ("the University of Wyoming violated its own regulation"); *id.* at ¶ 68 ("[t]he University of Wyoming's practices and actions . . . constitute unlawful discrimination . . . under Title VI"); *id.* at ¶ 72 ("[t]he University of Wyoming's practices and actions . . . constitute unlawful discrimination . . . under Title IX"); *id.* at ¶ 77 ("the University of Wyoming violated [Plaintiff's] Fourteenth Amendment guarantees to equal protection"); *id.* at ¶ 79 ("the University of Wyoming violated [Plaintiff's] First Amendment guarantee to freedom of speech"); *id.* at ¶ 80 ("the University of Wyoming violated [Plaintiff's] First Amendment guarantee to freedom of religion").

are not included anywhere other than in the introduction of the parties and in one conclusory sentence at the end of Plaintiff's factual allegations ("In their official capacities, Defendants Seidel, Chestnut, Chitnis, and Bryant (and/or their official predecessors) either directed, approved, ratified, or otherwise suborned the actions and omissions of the University of Wyoming as described above[.]"). *Complaint* at ¶ 57. Dr. Chestnut is also not mentioned by name as a part of any factual allegation other than the conclusory sentence found at ¶ 57.[3] The conclusory statement that the Individual Defendants directed, approved, or ratified various actions, without more, does not provide enough facts to allow this Court to draw a reasonable inference that the Individual Defendants are liable for ***any*** misconduct, much less liable pursuant to each of Plaintiff's seven claims. What's more, the *Complaint* provides no facts regarding any alleged action Dr. Seidel, Dr. Chitnis, or Dr. Chestnut took, provides no timeframe for allegations of misconduct, and otherwise wholly fails to provide any of the required factual support to sustain a cause of action against any of the three. Accordingly, Plaintiff failed to state a claim under the federal pleading standard, and dismissal of the claims against Dr. Seidel, Dr. Chitnis, and Dr. Chestnut is proper.

Although Plaintiff is a bit more specific with respect to Ms. Bryant, the *Complaint* still lacks facts sufficient to establish any cause of action against Ms. Bryant. Plaintiff alleges Ms. Bryant "has repeatedly shown animosity toward him, including refusing to respond to his emails for months at a time and excluding him from meetings," cut his hours, and withheld work. *Complaint* at ¶ 42-44. However, these allegations are insufficient to establish a cause of action

---

[3] Construed liberally, the *Complaint* may imply Dr. Chestnut was involved in the diversity training at issue in the *Complaint*. However, even construed liberally, this one fact, without more, is insufficient to establish a cause of action against Dr. Chestnut. Even if Dr. Chestnut was involved in the diversity training, Plaintiff does not allege any facts showing that mere involvement in diversity training is somehow unlawful.

against Ms. Bryant, as Plaintiff fails to allege that Ms. Bryant's conduct was based upon any discriminatory or illegal motive. Rather, the only allegation is that Ms. Bryant had "animosity" toward Plaintiff. Of course, animosity towards a person is not actionable misconduct under any of the laws Plaintiff claims he is entitled to relief under. Finally, Plaintiff's *Complaint* fails to allege a similarly situated individual that Ms. Bryant treated differently. Accordingly, under any of Plaintiff's theories, he failed to plead sufficient facts to proceed against Ms. Bryant and his claims against her must be dismissed.

C.    <u>The Individual Defendants are not "employers" pursuant to the WFEPA.</u>

Plaintiff's second cause of action alleges discrimination in violation of the WFEPA. *Complaint* at ¶¶ 63-64. Because the Individual Defendants are not subject to the WFEPA, Plaintiff's claim for violation of the WFEPA against the Individual Defendants must be dismissed. Specifically, the WFEPA provides, "[i]t is a discriminatory or unfair employment practice . . . [f]or an ***employer***" to engage in the enumerated discriminatory practices. Wyo. Stat. § 27-9-105 (emphasis added). The WFEPA defines an "employer" as "the state of Wyoming or any political subdivision or board, commission, department, institution or school district thereof, and every other person employing two (2) or more employees within the state." Wyo. Stat. § 27-9-102(b).

Here, Plaintiff does not allege any of the Individual Defendants "employ" two or more employees. They do not. Instead, they themselves are employees, not employers. Accordingly, they are not subject to liability under the WFEPA.

**II.**      <u>**Plaintiff failed to meet the pleading standard on his claims against the University.**</u>

Plaintiff's *Complaint* also fails to satisfy the pleading requirements of *Iqbal* and *Twombly* with respect to his claims against the University. Although Plaintiff makes numerous

conclusory allegations, Plaintiff fails to plead sufficient *facts* to move his claims from conceivable to plausible. Setting aside Plaintiff's legal conclusions, as this Court is required to do, Plaintiff's *Complaint* includes no actionable facts, and the Court should therefore dismiss his claims.

Plaintiff's allegations can be divided into two categories for the purposes of analyzing why his claims must all be dismissed: (A) reverse discrimination claims (including Title VII, Title IX, and Title VI related to race and gender);[4] and (B) religious discrimination claims (Title VII claims related to religion). For the reasons set forth below, both categories of claims must be dismissed for failure to plead facts sufficient to meet the plausibility standard.[5]

A. Plaintiff failed to meet the heighted standard required of a reverse discrimination claim.

Plaintiff is a white, heterosexual, male. *Complaint* at ¶¶ 20; 22-23. He therefore has a higher pleading standard because he is not a member of a historically disfavored group.

---

[4] Title VII makes it unlawful to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VI prohibits discrimination based on race, color, or national origin in any program or activity receiving federal financial assistance. 42 U.S.C. § 2000d. Title IX prohibits discrimination based on sex in any educational program or activity receiving federal financial assistance. 20 U.S.C. § 1681. Accordingly, Title VII is applicable to all of Plaintiff's allegations of discrimination (male/heterosexual, white, Christian). Title VI will apply only to the allegations of discrimination related to being white. Title IX will apply only to the allegations of discrimination related to being male/heterosexual. However, because Title VI, VII, and IX claims for discrimination and retaliation are generally analyzed in the same way, the analysis herein is not separated out by individual claims. *See, e.g., Hiatt v. Colo. Seminary,* 858 F.3d 1307, 1315-16 n.8 (10th Cir. 2017) (Title IX and Title VII analysis both apply *McDonnell Douglas* framework); *Bird v. Regents of N.M. State Univ.,* 619 Fed. Appx. 733 (10th Cir., Aug. 6, 2015) (applying Title VII standards to Title VI retaliation claims).

[5] The WFEPA provides no greater protection than Title VII under the facts of this case since the University qualifies as an employer under both statutes. *See, e.g., Kruzich v. Martin-Harris Gallery, LLC,* 2006 WY 7, ¶ 14, 126 P.3d 867, 872 (Wyo. 2006) (the *McDonnell Douglas* burden shifting approach applies to WFEPA claims). For the reasons set forth herein related to failure to sufficiently plead federal discrimination claims based upon race, sex, and religion, Plaintiff's claim for violation of the WFEPA must also be dismissed.

*Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir. 1992). Generally, a plaintiff must establish a prima facie case of discrimination by demonstrating the following: "(1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, LLC,* 487 F.3d 790, 800 (10th Cir. 2007) (citations omitted); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). However, in reverse discrimination claims, where the plaintiff is not a member of a historically or socially disfavored group, the plaintiff must do more to establish a prima facie case. *Notari,* 971 F.2d at 589. A plaintiff alleging reverse discrimination must, "in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari,* 971 F.2d at 589. "[A] plaintiff may recover if the plaintiff can demonstrate he or she is the victim of reverse discrimination by 'direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff.'" *Dickerson v. Bd. of Trs. of Metro. State Univ. of Denver,* 2021 U.S. Dist. LEXIS 25279 (D. Colo., Feb. 10, 2021) (quoting *McGarry v. Board of County Comm'rs,* 175 F.3d 1193, 1199 (10th Cir. 1999)).

Plaintiff did not plead facts sufficient to establish any of the three options for reverse discrimination. He provides no factual support for direct discrimination, no evidence the University is an "unusual employer" that discriminates against the majority, and no facts to establish "but for" causation. Accordingly, his Title VII, Title VI and Title IX reverse discrimination claims for gender and racial discrimination must be dismissed.

i.    *Plaintiff provides no alleged direct evidence of discrimination.*

"Proof by direct evidence requires evidence that the actual motive behind the termination of [the plaintiff's] employment was discriminatory animus." *Mitchell v. City of Wichita*, 140 Fed. Appx. 767, 778 (10th Cir. 2005). Direct evidence of discrimination "is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. United States DOL,* 476 F.3d 847, 854 (10th Cir. 2007) (internal quotations omitted). It requires proof of a policy that constitutes discrimination or "oral or written statements on the part of a defendant showing a discriminatory motive." *Id.* at 855. However, "[a] statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Vaughn v. Villa,* 537 F.3d 1147, 1155 (10th Cir. 2008) (citations omitted). "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." *Hall,* 476 F.3d at 855 (citations omitted).

Here, Plaintiff provides no factual allegations of direct discrimination in his *Complaint.* Plaintiff does not point to any policies or statements that are, in and of themselves, discriminatory. Rather, Plaintiff provides a baseless legal conclusion that the University discriminated against him. *See, e.g., Complaint* at ¶ 50-51; 59; 64; 65; 68; 72. Plaintiff may try to point to Ms. Bishop's alleged statements that he needed to "find a way to 'check a box'" to be promoted as alleged direct evidence of discrimination. *Id.* at ¶ 28. It is not, and Plaintiff's

imaginative interpretation of Ms. Bishop's statement is nothing more than speculation.[6] To be clear, the ***only statement*** Plaintiff attributes to Ms. Bishop is "find a way to 'check a box,'" a benign statement that has many potential non-discriminatory meanings. *See Vaughn,* 537 F.3d at 1155. Further, Plaintiff himself acknowledges that Ms. Bishop herself "never personally endorsed this [alleged] internal discrimination." *Complaint* at ¶ 27. At most the statement is circumstantial evidence in light of the fact that Plaintiff acknowledges Ms. Bishop did not do anything discriminatory herself.

> ii.     *Plaintiff provides no alleged evidence the University is an "unusual employer" that discriminates against the majority.*

Absent evidence of direct discrimination, a reverse discrimination plaintiff may establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority. *Notari,* 971 F.2d at 589. Courts allow a plaintiff to survive a motion to dismiss where the plaintiff's allegations include information regarding the employer's staffing practices generally, showing the individual is in the minority at that entity. *See, e.g., Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1535 (10th Cir. 1995) (background circumstances included that "she was the only white employee in the otherwise all-Hispanic Bilingual/ESOL Department, and Hispanic supervisors made most of the employment decisions of which [she] complain[ed]"); *Perez v. Unified Gov't,* No. 10-CV-2107-JAR/GLR, 2011 U.S. Dist. LEXIS 56215, 2011 WL 2038689 (D. Kan., May 25, 2011) (of twenty-six

---

[6] Plaintiff alleges he knew the meaning of Ms. Bishop's statement, claiming she had to have meant that because he was a straight, white, Christian man, his employment and promotion were disfavored. *Complaint* at ¶ 28. Plaintiff provides no basis for this "understanding" of the statement and Plaintiff's guess as to the same is a mere speculative conclusion.

employees, only four or five were men, only women were in leadership roles, and the few men employed were manual laborers).

Here, Plaintiff does not allege any such circumstances. Plaintiff does not allege any facts indicating the University's staffing practices generally result in discrimination against the majority. *See Complaint.* Plaintiff also does not allege he was the only male, white, heterosexual employee at the University or RPC or that there are no male, white, heterosexual individuals in leadership at the University or RPC. *See id.* Accordingly, Plaintiff failed to plead the necessary background facts to move his allegations of racial and gender discrimination from conceivable to plausible.

       *iii.*    *Plaintiff did not establish "but for" being a straight, white male, he would not have suffered adverse employment action.*

As a last option, a plaintiff in a reverse discrimination case can survive a motion to dismiss in the absence of "background circumstances" if the plaintiff alleges facts "sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Notari,* 971 F.2d at 590. Importantly, it is insufficient for the plaintiff in reverse discrimination cases to merely allege he was a qualified individual who was treated differently than a similarly situated minority. *Id.; see also Larson v. United Air Lines,* 482 Fed. Appx. 344, *4 (10th Cir., June 1, 2012) (finding that differential treatment alone is insufficient to state a claim for reverse discrimination).

Here, Plaintiff did not meet this "but for'" standard. He set forth the below facts (setting aside his legal conclusions) in support of his reverse discrimination claim:

- "Despite Mr. Wilkins's skill, enjoyment, performance in, and repeated expressions to elevate the station of his employment at the

RPC, the University of Wyoming reduced his hours, denied him the opportunity to apply for various promotions, and eventually terminated him." *Complaint* at ¶ 24;

- "Ms. Bishop, as a Project Coordinator and his supervisor, also told Mr. Wilkins directly in a personal meeting that he would have to find a way to "check a box"–meaning fit into a non-straight-white-male-Christian category–if he wanted to move up at the University of Wyoming." *Id.* at ¶ 26;
- "Mr. Wilkins, based on his academic background and experience, was more than qualified to take over the full-time Project Coordinator role left empty by Ms. Bishop's elevation." *Id.* at ¶ 32;
- Ms. Bryant was promoted over Mr. Wilkins. *Id.* at ¶ 33.
- The University promoted Ms. Bryant on an emergency basis using its business necessity exception which "was a pretext to hiring its preferred candidate." *Id.* at ¶¶ 34-38;
- The assistant director position was summarily eliminated following Ms. Bryant's promotion. *Id.* at ¶ 41.
- Plaintiff's hours were cut and he was terminated. *Id.* at ¶¶ 43-45.

Taking these allegations as true, Plaintiff claims a similarly situated female (the historically disfavored group), Ms. Bryant, was treated differently than him, via her promotion on an emergency basis. However, this alone is insufficient in a reverse discrimination claim. Plaintiff failed to establish that but for his status as a white, heterosexual male, he would have been promoted. Further, Plaintiff provides this Court with no facts that could possibly lead this Court to conclude that the reduction in his hours or discharge would not have occurred but for his gender or race. Rather, his allegations center around Ms. Bryant's promotion, and his simple allegation of disparate treatment as a male is insufficient.

Plaintiff's allegations related to Ms. Bishop's statement that he needed to "check the box" are also insufficient to establish this but for standard. According to Plaintiff's *Complaint,* Ms. Bishop did not make any of the alleged adverse employment decisions. *Complaint* at ¶ 43 (alleging Ms. Bryant cut Plaintiff's hours); *id.* at ¶ 45 (Plaintiff was terminated after Ms. Bryant

was promoted to full director); *see also supra*, including FN6.  Even assuming that Plaintiff's

assumption regarding Ms. Bryant's intent with this statement is true, she ultimately did not make

any of the adverse employment decisions; therefore, her intent does not provide any factual support

for Plaintiff's reverse discrimination claims.  Without more, this one isolated statement fails to

show a reasonable probability that the adverse employment actions were a result of Plaintiff's sex

or race.  Because Plaintiff failed to plead facts sufficient to show a prima facie case of reverse

discrimination, his claims that he was discriminated against based on his sex or race must be

dismissed.

> **B.**  <u>Plaintiff failed to plead facts to support a claim for religious discrimination.</u>

To the extent Plaintiff alleges the University discriminated against him based upon

his Christian religious beliefs, the claim is scrutinized under the traditional burden-shifting

framework from *McDonnell Douglas.*[7]  Therefore, Plaintiff must demonstrate that: "(1) he was a

member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he

was terminated under circumstances giving rise to an inference of discrimination." *Barlow v. C.R.*

*Eng., Inc.,* 703 F.3d 497, 505 (10th Cir. 2012) (internal quotations and citations omitted).  "The

third prong is the critical inquiry in any religious discrimination case—a plaintiff must demonstrate

that the adverse employment action occurred under circumstances which give rise to an inference

of unlawful discrimination." *Allison v. Digital Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 156422, *9,

2013 WL 5862647 (D. Colo., Oct. 31, 2013).  "Plaintiffs can establish evidence of the third prong

---

[7] Plaintiff failed to specify which claim he alleges religious discrimination under. However, Title VII and the WFEPA are the only avenues Plaintiff can potentially claim religious discrimination under as the remainder of his causes of action do not apply to allegations of religious discrimination.

in various ways, such as actions or remarks made by decisionmakers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to plaintiff's termination." *Id.* (quoting *Barlow,* 703 F.3d at 505)).

Here, Plaintiff did not meet his burden of providing enough alleged facts to substantiate his claim that he was terminated, denied a promotion, or otherwise suffered an adverse employment action under circumstances giving rise to an inference of discrimination based on religion. Plaintiff alleges four facts related to his religion:

- "Mr. Wilkins is a Christian." *Complaint* at ¶ 21;
- "Ms. Bishop, as a Project Coordinator and his supervisor, also told Mr. Wilkins directly in a personal meeting that he would have to find a way to "check a box"–meaning fit into a non-straight-white-male-Christian category–if he wanted to move up at the University of Wyoming." *Id.* at ¶ 26;
- "By stating that Mr. Wilkins needed to "check a box," Ms. Bishop meant two things: (a) because Mr. Wilkins is a straight white Christian man—and therefore lacking in apparent diversity to satisfy internal hiring goals—his employment and promotion were impermissibly and unlawfully disfavored; and (b) if he were more willing to lean on his degenerative eye condition as a disability, she could use that to help get him promoted despite the fact that his status as a white Christian man made it difficult to lobby for him internally." *Id.* at ¶ 28; and
- "Thereafter, Mr. Wilkins was never given a meaningful opportunity for advancement or promotion, in part because the University of Wyoming was committed to disallowing his advancement because of his sex, race, and religion, and in part out of retaliation for his expression of his negative beliefs about CRT." *Id.* at ¶ 50.

Plaintiff's remaining "allegations" associated with his claim of religious discrimination are legal conclusions. *See id.* at ¶¶ 59; 64.

Stated simply, Plaintiff relies on one statement from Ms. Bishop that he needed to "check a box" in claiming religious discrimination. However, this one statement is insufficient to nudge Plaintiff's allegations from conceivable to plausible. Ms. Bishop's one statement could plausibly be interpreted in several ways, almost all of which are benign. Therefore, it cannot be

said to reflect any illegal or discriminatory animus and cannot, alone, form the basis for a religious discrimination claim. *See Vaughn,* 537 F.3d at 1155; *see also supra*, including FN6. Plaintiff wholly fails to provide any facts connecting this one statement to any alleged adverse employment action. Accordingly, Plaintiff's "naked assertions are devoid of further factual enhancement and therefore insufficient to withstand a 12(b)(6) Motion to Dismiss." *Allison,* 2013 U.S. Dist. LEXIS 156422, 2013 WL 5862647 (quoting *Ashcroft,* 556 U.S. at 678)); *see also, e.g., Parker v. Amazon.com.indc LLC*, 2018 U.S. Dist. LEXIS 183582 (S.D. Ind., Oct. 26, 2018).

**III.** **Defendants are immune from Section 1983 claims.**

Plaintiff also claims he is entitled to relief under 42 U.S.C. § 1983 for violation of his right to equal protection, and because "the University of Wyoming" violated his First Amendment rights to freedom of speech and freedom of religion. *Complaint* at ¶¶ 76-80. The *Complaint* includes no meaningful allegations related to due process. Regarding speech, Plaintiff claims the University retaliated against him for his use of an October 2019 evaluation of required diversity training to express complaints about the inclusion of critical race theory in the training. *Id.* at ¶¶ 48-49, 79. He claims his comments became part of his permanent employment file and were then used to deny him advancement or promotion at the University. *Id.* at ¶ 49. Regarding religion, Plaintiff asserts that he was denied advancement in employment "in part or in whole because of his Christian beliefs," and that the University's conduct in this regard violated his First Amendment guarantee to freedom of religion. *Id.* at ¶ 80.

Under 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a plausible claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Gressley v. Deutsch,* 890 F. Supp. 1474, 1483 (D. Wyo. 1994) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). Therefore, the inquiry is two pronged: (1) whether the plaintiff asserts a violation of a protected right; and (2) whether a person acting under color of state law committed the alleged deprivation. *See id.*

Supreme Court precedent makes clear that a state and state officials sued in their official capacity for monetary relief are not suable § 1983 "persons." *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 66 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); *see also id.* at 71 (holding suits against a state official in his or her official capacity are no different than suits against the state itself; therefore, state officials in their official capacities are also not "persons" under § 1983). This Court has determined that the University of Wyoming and its employees in their official capacities are entitled to Eleventh Amendment immunity from § 1983 suits and are therefore not "persons" that may be sued pursuant to § 1983. *Gressley v. Deutsch,* 890 F. Supp. 1474, 1488 (D. Wyo. 1994); *Sanchez v. Dubois*, 2007 U.S. Dist. LEXIS 108008, *50 (D. Wyo., Aug. 23, 2007) ("Any claims brought pursuant to 42 U.S.C. § 1983 against the University of Wyoming and its Board of Trustees and employees in their official capacities are precluded by Eleventh Amendment immunity.").

Because the University of Wyoming and its employees acting in their official capacities are immune from § 1983 suits and are not "persons" pursuant to the statute, Plaintiffs two claims under § 1983 (Claims VI and VII) fail as a matter of law Accordingly, Plaintiff's claims for deprivation of Fourteenth Amendment and First Amendment rights must be dismissed.[8]

**IV.** **Violation of a University regulation is not an actionable claim.**

Plaintiff asserts a cause of action for violation of University of Wyoming Regulation 4-1, claiming that the University violated the regulation by discriminating against him and retaliating against him. *Complaint* at ¶ 65. The cause of action provides no factual details with respect to what actions Plaintiff claims violated the regulation. Setting that failure aside, the "cause of action" still fails, as a University regulation does not form the basis for a standalone claim.

Generally, "a legal duty is normally not established through rules and regulations of a university." *Quinn v. Sigma Rho Chapter,* 507 N.E.2d 1193 (Ill. Ct. App. 1987). Consistent with this premise, asserting a cause of action for violation of a University regulation is similar to asserting a cause of action for violation of a statute. *See, e.g., Schermerhorn v. Regents of the Univ. of Cal.,* 2007 Cal. App. Unpub. LEXIS 5708 (Cal. Ct. App. 2007) (analogizing cause of action for violation of a university regulation to private cause of action for violation of a statute). In Wyoming, absent express legislative intent to create a private cause of action via statute, courts may imply a private cause of action from a statute only where it is clear the legislature intended to do so. *See Herrig v. Herrig*, 844 P.2d 487, 492 (Wyo. 1992). However, implication of a private

---

[8] Plaintiff does not assert any claim for prospective relief; therefore, he is not entitled to the *Ex parte Young* exception to the Eleventh Amendment. *See Ex parte Young,* 209 U.S. 123 (1908); *Gressley,* 890 F.Supp. 1474 at 1488.

right of action from a statute is disfavored and occurs only where there is clear legislative intent to do so. *See id.*

Here, Plaintiff provides no basis for asserting a private cause of action for violation of a University regulation. There are no indications from his *Complaint* that the University intended to allow an individual to seek damages for violation of a regulation. *See Complaint.* Further, employees have ample avenues to pursue claims of discrimination outside the context of the University's regulation. *See Allen v. Safeway Stores,* 699 P.2d 277, 283-84 (Wyo. 1985) (declining to allow a plaintiff to assert a tort claim for wrongful discharge where Title VII and the WFEPA provided an avenue for the same). As the University did not intend to allow an individual to file a private action to enforce a University regulation, dismissal of Plaintiff's claim is required.

## IV. Plaintiff failed to exhaust administrative remedies regarding some of his discrimination claims.

For all of the reasons explained above, the Court should dismiss Plaintiff's *Complaint* in its entirety. However, to the extent any of Plaintiff's discrimination claims survive, Plaintiff failed to exhaust his administrative remedies related to several of his theories. Specifically, and although Plaintiff's allegations are vague, construed liberally, the *Complaint* appears to Plaintiff include claims for failure to promote as well as termination based on sex, race, or religion under Title VII and the WFEPA. *See Complaint* at ¶ 60 ("Based on the assistant director position the University of Wyoming unlawfully precluded JL Wilkins from applying for and obtaining . . ."); *id.* at ¶¶ 63-64. Setting aside that Plaintiff's lack of factual allegations makes it difficult to know exactly what he is claiming, he also failed to exhaust his administrative remedies with respect to his claims for failure to promote and termination based on sex, race, or religion.

Therefore, the portion of Plaintiff's Title VII claim related to sex, race, and religion, and his WFEPA related to the same fail as a matter of law.

    A. <u>Any claim for failure to promote is time barred.</u>

        A plaintiff must exhaust his administrative remedies prior to filing suit under Title VII or the WFEPA, which includes filing a charge of discrimination implicating the same conduct as that alleged in the complaint. *See, e.g., Mitchell v. City & County of Denver*, 112 Fed. Appx. 662, 667 (10th Cir. 2004); Wyo. Stat. § 27-9-106; *Hoflund v. Airport Golf Club,* 2005 WY 17, 105 P.3d 1079 (Wyo. 2005). An employee alleging unlawful employment practices must file a charge of discrimination within 300 days of the allegedly unlawful practice if the individual initially institutes proceedings with a state agency. 42 U.S.C. § 2000e-5(e)(1). "[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003) (citations omitted). "Discrete incidents of discrimination include termination, failure to promote, and denial of training opportunities." *Salemi v. Colo. Pub. Emples. Ret. Ass'n,* 747 Fed. Appx. 675, 688 (10th Cir. 2018).

        Here, Plaintiff first filed a charge of discrimination with the Wyoming Fair Employment Program. *Complaint* at Ex. A. Therefore, he was required to file a charge of discrimination within 300 days of any allegedly unlawful practice, including each discrete instance of the same. In his *Complaint*, Plaintiff alleges the University discriminated against him in promoting Ms. Bryant to be the assistant director of the RPC in September 2018 rather than him. *Complaint* at ¶¶ 34; 39-40; 60. However, as demonstrated by the exhibits to his *Complaint*, Plaintiff filed his first *Charge of Discrimination* on July 8, 2021, nearly three years after the

University promoted Ms. Bryant to be the Assistant Department Director. *Id.* at Ex. A; *id.* at ¶ 34 (alleging Ms. Bryant was promoted to be the assistant department director in September 2018). Therefore, the allegedly unlawful practice of failing to promote occurred more than 300 days prior to Plaintiff filing his charge of discrimination. As a result, he failed to timely exhaust his administrative remedies with respect to a claim of discrimination related to the hiring of an assistant director in September 2018.

   B. **Plaintiff failed to exhaust his administrative remedies with respect to alleged termination based on his sex, race, or religion.**

   The exhaustion rule serves two purposes: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith v. Cheyenne Ret. Inv'rs L.P.,* 904 F.3d 1159, 1164 (10th Cir. 2018). Consistent with these purposes, once a plaintiff receives a right to sue notice, "that plaintiff's claim in court is generally limited by scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination . . ." *Id.* (internal quotations and citations omitted). Although a failure to mark a box on the charge of discrimination is not dispositive, it creates a presumption that the claimant is not asserting claims represented by unchecked boxes. *Gunnell v. Utah Valley State College,* 152 F.3d 1253, 1260 (10th Cir. 1998). In these circumstances, courts look to the narrative section for evidence rebutting the presumption that unmarked forms of discrimination are not being asserted. *Id.*

   After the University terminated Plaintiff, he filed a second *Charge of Discrimination. Complaint* at Ex. B. In the narrative section of the second *Charge of Discrimination*, Plaintiff asserts the University retaliated against him by discharging him for

engaging in protected opposition to Title VII discrimination. *Id; see also Complaint* at ¶ 5 (the University "terminated Mr. Wilkins in retaliation for filing a discrimination complaint he filed earlier in 2021"). The second *Charge of Discrimination* makes no allegations that the University terminated Plaintiff based on his race, sex, or religion, whether via the boxes checked or the narrative section. *See id.* There are no facts in Plaintiff's second *Charge of Discrimination* from which one might infer that he was the victim of any discrimination related to race, sex, or religion. Indeed, the *Charge of Discrimination* is specific to the alleged retaliation he claims occurred because of his first *Charge of Discrimination*. Accordingly, and to the extent any of Plaintiff's legal theories survive despite the arguments previously raised, Plaintiff's claims related to his termination in this litigation are limited to the scope of his *Charge of Discrimination,* which only references retaliation.

Contrary to the scope of the second *Charge of Discrimination,* Plaintiff now claims in his *Complaint* that the University terminated him based on his race, sex, and religion. *Id.* at ¶¶ 20-23; 59-64. However, because Plaintiff did not raise these allegations in his second *Charge of Discrimination*, he failed to exhaust his administrative remedies regarding the allegations that the University terminated him based on his race, sex, or religion. Accordingly, Plaintiff's claim related to the same must be dismissed.

## CONCLUSION

For the reasons set forth herein, Plaintiff's *Complaint* must be dismissed. Baseless legal conclusions and flawed interpretations of the law cannot be permitted to go forward. Accordingly, Defendants respectfully request this Court dismiss Plaintiff's *Complaint* in its entirety.

HIRST APPLEGATE, LLP                    – 25 –
LAW OFFICES
P.O. BOX 1083
CHEYENNE, WYOMING 82003-1083

Dated:  21 November 2022.

THE UNIVERSITY OF WYOMING,
ED SEIDEL, KIM CHESTNUT, PARAG
CHITNIS and H. VICTORIA BRYANT,
Defendants,

BY: /s/ Robert C. Jarosh
      **ROBERT C. JAROSH, #6-3497**
      **ERIN E. BERRY, #7-6063**
      OF HIRST APPLEGATE, LLP
      Attorneys for Defendants
      P. O. Box 1083
      Cheyenne, WY 82003-1083
      Phone: (307) 632-0541
      Fax: (307) 632-4999
      rjarosh@hirstapplegate.com
      eberry@hirstapplegate.com

### CERTIFICATE OF SERVICE

I certify the foregoing ***Defendants' Memorandum in Support of Motion to Dismiss*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 21 November 2022, and that copies were served as follows:

| | |
|---|---|
| O. Shane Balloun | ☐ U.S. MAIL |
| Balloun Law Professional Corporation | ☐ FED EX |
| 355 Harris Avenue, Suite 201 | ☐ FAX |
| Bellingham, WA 98225 | ☐ HAND DELIVERED |
| *Attorney for Plaintiff* | ☐ EMAIL |
| | ☑ E-FILE |

/s/ Robert C. Jarosh
OF HIRST APPLEGATE, LLP
Attorneys for Defendants