

**FILED**

**Margaret Botkins**
**Clerk of Court**

9:19 am, 12/19/22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JL WILKINS,<br><br>    Plaintiff,<br><br>vs.<br><br>THE UNIVERSITY OF WYOMING; ED SEIDEL, in his official capacity as President of the University of Wyoming; KIM CHESTNUT, in her official capacity as Interim Vice President for Diversity, Equity, and Inclusion; PARAG CHITNIS, in his official capacity as Vice President for Research and Economic Development; and H. VICTORIA BRYANT, in her official capacity as Director of the Wyoming Technology Transfer and Research Products Center,<br><br>    Defendant. | Case No.  22-CV-204 |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss.  ECF 5, 6.  The Plaintiff has responded, ECF 8, and the Defendants have replied, ECF 9.  The matter has been fully briefed and is ready for decision.

Given that Plaintiff confesses various parts of Defendants' Motion (ECF 8), the following claims are DISMISSED WITH PREJUDICE:

- Claim III, Violation of University of Wyoming Regulation 4-1; Claim VI, Deprivation of Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983; and Claim VII, Deprivation of First Amendment Rights pursuant to 42 U.S.C. § 1983.

- All claims pled against Ed Seidel, in his official capacity as President of the University of Wyoming; Kim Chestnut, in her official capacity as Interim Vice President for Diversity, Equity, and Inclusion; Parag Chitnis, in his official capacity as Vice President for Research and Economic Development; and H. Victoria Bryant, in her official capacity as Director of the Wyoming Technology Transfer and Research Products Center ("RPC"); and,

- Claims I, II, IV, and V but only to the extent these claims are based on the University of Wyoming's failure to promote Plaintiff to assistant director of the RPC.

For the reasons stated below, the Court concludes that Plaintiff's complaint about reduction of hours[1] is the only race, sex, or religion-based discrimination that was properly exhausted by Plaintiff (and not time-barred).[2] However, the Court further concludes Plaintiff failed to allege enough facts to plausibly state a claim to relief for the reduction of hours because of discrimination on the basis of his race, sex, religion, or retaliation. Therefore, certain claims are dismissed without prejudice to the extent the claims, including discharge, are based on race, sex or religion discrimination. Absent an amended complaint, the only claims which survive Defendants' motion to dismiss are Plaintiff's claims of retaliatory discharge in violation of federal and state law.

---

[1] "Reduction of hours" includes both complaints that Plaintiff's hours were reduced by 90% and that Defendants withheld work for the remaining 10%
[2] Plaintiff confesses Defendants' motion to dismiss his claims based on failure to promote.

Background

Plaintiff alleges the following facts relevant to the claims he has not confessed, which this Court assumes as true. Plaintiff is a Christian man who primarily identifies as white and heterosexual. In May 2015, Plaintiff accepted a position as a paid Patent Research Analyst intern with the RPC. After graduation, Plaintiff continued working for the RPC as a part-time employee. Plaintiff alleges he and one of his supervisors, Ms. Bishop, regularly discussed potential opportunities for Plaintiff's advancement. Plaintiff alleges Ms. Bishop told Plaintiff directly in a personal meeting that he would have to find a way to "check a box" if he wanted to move up at the University. Plaintiff understood that to mean he needed to fit into a non-straight-white-male-Christian category and lean on his degenerative eye condition as a disability in order for Ms. Bishop to help get him promoted. Plaintiff alleges the gist of Ms. Bishop's statements were that once Plaintiff "had become 'disabled enough,' i.e., once his vision condition had sufficiently degenerated, he would 'check the [disabled] box' and become promotable within the internal culture of the University of Wyoming." ECF 1, p. 4.

In October 2019, Plaintiff took part in a diversity training he alleges was steeped in critical race theory. Plaintiff stated his opposition to the training, which became part of his permanent employment record. Plaintiff alleges that after he submitted this feedback, he was never given a meaningful opportunity for advancement or promotion.

Plaintiff alleges a second supervisor, Ms. Bryant, repeatedly showed animosity toward Plaintiff, including refusing to respond to his emails for months at a time, excluding him from meetings, cutting his hours by over 90%, and withholding work that filled the

3

remaining 10%. Plaintiff alleges the day after Ms. Bryant was promoted to RPC director, the University fired Plaintiff with no explanation.

On July 8, 2021, Plaintiff filed a *Charge of Discrimination* against the University claiming he was denied a promotion and his hours were cut because of his sex, sexual orientation, race, and religion. ECF 1, pp. 11-12. On November 4, 2021, Plaintiff filed a second *Charge of Discrimination* against the University based on retaliation, alleging he engaged in protected opposition to Title VII discrimination, was discharged, and a causal connection exists "between [his] complaint and [the University's] decision to discharge [him]. *Id.*, pp. 13-14.

## Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "At this stage in the litigation, [the court] accept[s] as true the well pleaded factual allegations and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'" *Hogan v. Winder,* 762 F.3d 1096, 1104 (10th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the plausibility of a claim, "mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Han. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011).

Plaintiff is a white, heterosexual, male and, as such, he is not a member of a historically disfavored group. However, protection against discrimination is not limited to those individuals who are members of historically or socially disfavored groups. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976). A "reverse discrimination plaintiff" may support a prima facie case of intentional disparate treatment "when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir. 1992) (quoting *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir. 1981). Alternatively, a reverse discrimination plaintiff may plead factual content that allows the court to draw a reasonable inference that but for Plaintiff's race, gender and/or sexual orientation, he would not have suffered discrimination. *Natori*, 971 F.2d at 590-591; *see also McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1199 (10th Cir. 1999).

The right to bring actions under Title VII and Wyoming's Fair Employment Practices Act are predicated on the exhaustion of administrative remedies. 29 CFR § 1614.105; *See Showalter v. Weinstein*, 233 F. App' x. 803 (10th Cir. 2007); Wyo. Stat. § 27-9-106; *Hojlundv. Airport Golf Club,* 105 P.3d 1079 (Wyo. 2005). Consistent with *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850-51 (2019), the Tenth Circuit has held " a plaintiff' s failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018); *see also Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th

Cir. 2020) ("This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense").

Discussion

Plaintiff's remaining claims (Claims I, II, IV and V) are based on allegations of unlawful employment discrimination and/or retaliation under federal and state law.

The University argues that Plaintiff fails to plead sufficient facts to support his discrimination claim to meet the facial plausibility standard required by *Iqbal*. Further, as to Plaintiff's claims of discrimination because he is a white heterosexual male, the University argues Plaintiff fails to plead sufficient facts to meet the heightened standard required for a reverse discrimination claim. Finally, the University argues that Plaintiff failed to exhaust his administrative remedies with respect to his claims of discrimination and/or termination based on sex, race or religion.

Plaintiff opposes dismissal, arguing his complaint satisfies the test for a prima facie case as a reverse discrimination plaintiff. More specifically, Plaintiff argues he has pled direct proof of discriminatory intent in the form of Ms. Bishop's "check a box" statement, which also supports his claim of discrimination based on religion. Further, Plaintiff argues that Defendant's action in reducing his hours by 90% and then withholding the final 10% is not time-barred because the complaint does not indicate when that occurred and because the date must therefore be resolved in favor of Plaintiff. Finally, Plaintiff argues the timing and sequence of events leading to his termination support the retaliation claims.

As to the failure to exhaust argument, Plaintiff points out that his first Charge of Discrimination was still pending when his second Charge was filed, and that the second

charge cannot be considered in a vacuum. He also argues that his narrative specifically states he "suffered an adverse employment action by the [University] subsequent to or contemporaneous with my complaints of discrimination." ECF 1, p. 13. Consequently, Plaintiff argues the University cannot credibly claim it was not already immediately on notice of Plaintiff's claims of discrimination, or that it did not have notice that Plaintiff was also making a discrimination claim in addition to his marked-box retaliation claim.

Turning first to Plaintiff's complaint that his hours were cut, the Court agrees with Plaintiff that Defendants' actions in reducing hours are not time-barred and that Plaintiff's administrative remedies have been exhausted. Plaintiff further argues that the reduction in hours is plausibly supported by background facts showing an unusual favoritism toward women in leadership at the RPC, and direct evidence of discrimination *vel non* (the "check a box" statement from Ms. Bishop). ECF pp. 7-8. In summary, Plaintiff argues his complaint on race, sex, and religion discrimination is sufficient to survive dismissal. For the following reasons, the Court disagrees.

First, the RPC and its "leadership" do not constitute Plaintiff's employer – the University, and the isolated facts relating to positions held by Ms. Douglas, Ms. Bishop, and Ms. Bryant fail to show any plausible inference that the University is one of those "unusual employers" that discriminates against men. Further, these facts show nothing relating to Plaintiff's race, sexual orientation, and religion discrimination accusations, nor do they show anything supporting Plaintiff's claims that his hours were cut based on retaliation. Finally, the isolated, undated, and ambiguous "check a box" statement attributed to Ms. Bishop, whom Plaintiff alleges never personally endorsed discrimination,

7

is in no way tied to Ms. Bryant (the person who allegedly cut Plaintiff's hours), and there are no allegations relating to Ms. Bryant's statements or conduct other than Plaintiff's view that she showed "animosity" toward him. In short, the "check a box" statement by Ms. Bishop is neither direct evidence of discrimination by Plaintiff's employer, nor is it sufficient by itself to raise an inference of reverse discrimination by the University that is plausible on its face. For the same reasons, the "check a box" statement also fails to state a claim that Plaintiff's hours were cut because of retaliation. Therefore, Plaintiff's complaint that his hours were cut, which was administratively exhausted, is dismissed without prejudice for failure to state a claim.

      The Court will next turn to the briefing on exhaustion of administrative remedies relevant to Plaintiff's November 4, 2021 Charge of Discrimination. Even though failure to exhaust is not a jurisdictional prerequisite, a claim for discrimination still cannot survive unless the plaintiff complies with the requirement to exhaust his or her administrative remedies. Through their motion to dismiss, Defendants reference Plaintiff's Charge of Discrimination, filed November 4, 2021, which states he was retaliated against by his discharge after having engaged in protected opposition to Title VII discrimination, and that he suffered an adverse employment action by the University subsequent to or contemporaneous with his complaints of discrimination and he was discharged. ECF 1, p. 13. Plaintiff's protected opposition to Title VII discrimination is in the record by his Charge of Discrimination filed July 8, 2021. ECF 1, pp. 11-12. The "adverse employment action subsequent to or contemporaneous with [his] complaints of discrimination" is stated as his discharge, which is the only adverse employment action mentioned. Plaintiff's

November 4, 2021 Charge of Discrimination <u>does not mention</u> discrimination or termination based on race, sex or religion.

However, that is not the end of the inquiry. A suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997). A claim is " reasonably related" when "the conduct complained of would fall within the scope of the administrative investigation which can reasonably be expected to grow out of the charge that was made." *Mitchell v. City & Cty. of Denver*, 112 F. App' x 662, 667 (10th Cir. 2004) (citations omitted).

In considering the allegations that Plaintiff seeks to include within his November 4, 2021 Charge, the Court concludes that the only issue within the scope of the November Charge is retaliatory discharge. Plaintiff does not say he suffered adverse employment *actions*, but only *an adverse employment action* – discharge. Further, he does not say he suffered this action based on, because of, or in any way related to discrimination based on race, sex or religion. Rather, the Charge directly relates the adverse employment action to "complaints of discrimination." This is a classic Charge of Discrimination based on retaliation, <u>not</u> one based on race, sex or religion discrimination. Further, Plaintiff's argument that the November Charge should be considered in the context of his (then-still-pending) July Charge is unpersuasive given that Plaintiff provides no factual allegations or persuasive argument to support any view that somehow two distinct Charges of Discrimination (one complaining about adverse workplace actions and another complaining about discharge) would merge into one.

9

In summary, there are no allegations of discrimination based on race, sex or religion in Plaintiff's November Charge of Discrimination, as the only conduct complained of is Plaintiff's discharge in retaliation for engaging in protected opposition to Title VII discrimination and making complaints of discrimination.  Discriminatory workplace conduct (e.g., discharge) based on race, sex or religion are separate from what would fall within an investigative scope for retaliation claims.  Because of this, the Court concludes Plaintiff' s discrimination allegations (race, sex and religion) from his complaint are not "reasonably related" to his November 4, 2021 Charge of Discrimination because there is no obvious reason why an investigation into allegations of retaliation based on protected opposition or complaints would cover or grow into an investigation into discrimination and/or termination based on race, sex, or religion.

Based on the foregoing analysis that Plaintiff fails to state a claim that his hours were reduced based on retaliation or race, sex, and/or religion discrimination, and further that Plaintiff failed, in part, to exhaust his administrative remedies, the Court dismisses without prejudice those portions of Claims I and II to the extent the claims rely on alleged discrimination based on race, sex, or religion.  The Court also dismisses without prejudice those portions of Claims I and II to the extent these claims are based on retaliation by the University of Wyoming in reducing Plaintiff's hours.  Further, the Court dismisses without prejudice Claim IV and Claim V as these claims, as worded, rely entirely on allegations of discrimination, not retaliation.

Turning next to Defendants' remaining arguments in support of the motion to dismiss, the Court concludes that Plaintiff's retaliatory discharge claim is sufficiently pled to survive Defendants' motion.

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants Motion of Dismiss. ECF 5. Therefore, it is HEREBY ORDERED that the following claims are DISMISSED WITH PREJUDICE:

- Claim III, Violation of University of Wyoming Regulation 4-1; Claim VI, Deprivation of Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983; and Claim VII, Deprivation of First Amendment Rights pursuant to 42 U.S.C. § 1983.

- All claims pled against Ed Seidel, in his official capacity as President of the University of Wyoming; Kim Chestnut, in her official capacity as Interim Vice President for Diversity, Equity, and Inclusion; Parag Chitnis, in his official capacity as Vice President for Research and Economic Development; and H. Victoria Bryant, in her official capacity as Director of the Wyoming Technology Transfer and Research Products Center ("RPC"); and

- Claims I, II, IV, and V but only to the extent these claims are based on the University of Wyoming's failure to promote Plaintiff to assistant director of the RPC.

IT IS FURTHER ORDERED that the following claims are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies:

- Those portions of Claims I and II which rely on alleged discrimination based on race, sex, or religion, or rely on alleged retaliation as a basis for the reduction of Plaintiff's hours; and

- All remaining portions of Claim IV and Claim V.

IT IS SO ORDERED.

Dated this  19th  day of December, 2022.

*Nancy D Freudenthal*
_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE